IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ACLATE, INC.,

                     Plaintiff;

       v.

ECLIPSE MARKETING LLC,
RELENTLESS MANAGEMENT GROUP
LLC, and ALEX MINICUCCI,

               Defendants.

Civil Action No. 20-576-RGA

MEMORANDUM ORDER

      Before me is Plaintiff Aclate's motion to dismiss Count III of Defendants' Counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 37). The parties have briefed the matter. (D.I. 38, 42, 44). For the reasons set forth below, Plaintiff's motion is GRANTED.

**I. BACKGROUND**

      The parties to this action are involved in the "mobile and loyalty marketing business." (D.I. 2 ¶ 17). On November 30, 2018, Plaintiff Aclate entered into a Stock Purchase Agreement with Defendant Eclipse Marketing to acquire all issued and outstanding shares of SMS Masterminds, a mobile marketing firm. (D.I. 2 ¶ 18; D.I. 2-1 at 3). Plaintiff contends that Defendant Alex Minicucci founded SMS Masterminds in 2008 as part of a "formation-spend-sell scheme." (D.I. 2 ¶ 18). Defendants deny that Minicucci founded SMS Masterminds but admit that he served as its CEO and later its Chief Strategy Officer. (D.I. 29 ¶¶ 18, 20). Minicucci founded both Defendant Relentless Management Group and Defendant Eclipse Marketing in 2017 ("Relentless" and "Eclipse" hereafter). (D.I. 29 ¶ 21).

      All three Defendants were involved in the 2018 Stock Purchase Agreement. Eclipse had acquired SMS Masterminds from SpendSmart Networks before the 2018 sale of SMS Masterminds to Aclate. (D.I.

29 ¶ 22).  Minicucci, via Relentless and its employees, provided the documents necessary for Aclate's due diligence on SMS Masterminds.  (D.I. 2 ¶ 25).  Additionally, Minicucci made Relentless employees available to Aclate to provide transition services. (D.I. 29 ¶ 25).

The Stock Purchase Agreement, attached to Plaintiff's complaint as Exhibit A, provided for a two-pronged payment structure. (D.I. 2-1 at 3).[1]  Aclate was to pay $2,200,000 upon closing and the parties agreed to additional "Contingent Consideration" arising during a "Revenue Share Period" lasting through November 29, 2019.  (D.I. 2-1 at 3-4, 38).  During this period, Aclate owed Eclipse $7500 for "any customer contract for the license or sale of any Company Product entered into by [SMS Masterminds] or an affiliate thereof . . . who is not a customer of [SMS Masterminds] as of the Closing Date and pursuant to which at least $1.00 has been collected." (D.I. 2-1 at 4).  Additionally, the Purchase Agreement contains a provision identifying Delaware as the governing law and venue for any Legal Proceeding "arising out of or relating to this Agreement, the agreements delivered in connection with this Agreement, or the transactions contemplated hereby or thereby." (D.I. 2-1 at 33).

According to Aclate's complaint, it initially detected problems with the financial condition of SMS Masterminds when conducting its post-closing review. (D.I. 2 ¶ 37).  On April 28, 2020, Aclate filed a complaint alleging that Defendants (1) failed to disclose SMS Masterminds' outstanding liabilities; (2) misrepresented SMS Masterminds' anticipated revenue and profit margin; and (3) failed to turn over all of SMS Masterminds' assets. (*Id.*).  In connection with these claims, Plaintiff asserted violations of the Securities Exchange Act, Rule 10b-5, control person liability, fraudulent inducement, common law fraud, breach of contract, negligent misrepresentation, conversion, unjust enrichment, and requested declaratory judgment. (D.I. 2 ¶¶ 61, 69, 79, 89, 96, 105, 110, 116, 124).

Defendants filed an amended answer on July 17, 2020, denying all of Plaintiff's claims, asserting nineteen affirmative defenses, and three counterclaims. (D.I. 29 at 11-19, 19-21, 23-31).  Defendants'

---

[1] Plaintiff's Exhibit A (D.I. 2-1) is cited according to the docket pagination.

third counterclaim alleges that Aclate intentionally interfered with Relentless' employment relationships with several employees in connection with a separate contract between the parties. (D.I. 29 ¶¶ 40-51).[2]

Aclate and Relentless entered an agreement dated February 13, 2019, for Relentless to provide "SmartAppointment services" for SMS Masterminds. (D.I. 29 ¶ 8).  As described by Defendants, SmartAppointments are "confirmed sales meetings with qualified merchants in a Licensee's defined territory" and "were critical to the development and growth of the SMS Masterminds business." (D.I. 29 ¶ 42).  Aclate prepaid $15,000 for these services. (D.I. 29 ¶ 44).[3]  During the performance of the SmartAppointments agreement, a Relentless employee, Anji Roeser, and several other employees that Defendants do not name, left Relentless to join Aclate. (D.I. 29 ¶ 48).  Defendants argue that this hiring amounts to an intentional interference with Relentless' contractual relationship with its employees and that Aclate did so with the intention of "destroying Relentless's SmartAppointment line of business." (D.I. 29 at 31).

Plaintiff has moved to dismiss the counterclaim for intentional interference for failure to state a claim upon which relief can be granted. (D.I. 37, 38).

## II. STANDARD OF REVIEW

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard.  A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). When considering a 12(b)(6) motion, I may only consider

---

[2] Defendants' counterclaims are cited according to the renumbered paragraphs beginning on page 22 of the amended answer.
[3] Plaintiff acknowledges that the $15,000 was paid to Relentless and not "impermissibly removed by Defendants" for purposes of this motion only. (D.I. 38 at 3 n.2).

"document[s] integral to or explicitly relied upon in the complaint," including "any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the Plaintiff's claims are based on the document." *In re Asbestos Prods. Liab. Litig.*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1993); *PBGC v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

### A. Choice of Law

The parties disagree as to the state law that will govern Defendants' counterclaim. Defendants first raised this choice-of-law issue in their answering brief to Plaintiff's motion. (D.I. 42 at 1). In their brief, Defendants argue that the law of California should govern their counterclaim because it satisfies the

4

"most significant relationship" test. (D.I. 42 at 4).  Plaintiff contends that the law of Delaware applies

because Defendants failed to plead any facts to support a different choice-of-law in their amended answer

and further relied on the "Governing Law; Venue" Section of the Stock Purchase Agreement which

designates Delaware law as the law governing the transaction. (D.I. 44 at 3-4).

When exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367, a federal court must

apply the choice-of-law rules of the forum state in which it sits. *Chin v. Chrysler LLC*, 538 F.3d 272, 278

(3d Cir. 2008); *Sys. Operations, Inc. v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1136 (3d Cir. 1977). Thus,

Delaware's choice-of-law rules will govern this analysis.

Delaware's choice-of-law rules require a two-pronged approach. *Pennsylvania Emp., Benefit*

*Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466 (D. Del. 2010) (citing *In re Teleglobe Commc'ns*

*Corp.*, 493 F.3d 345, 358 (3d Cir. 2007)). First, the court must identify whether an actual conflict exists

through "an examination of the competing laws proposed by the parties." *Id*. at 467.  Second, if a conflict

exists, Delaware applies the "most significant relationship" test per the Restatement (Second) of Conflict

of Laws. *Id*.

As this is a motion to dismiss, I must also consider whether a choice-of-law analysis is

appropriate at this stage in the proceedings.  *Arçelik A.Ş. v. E. I. du Pont de Nemours & Co.*, 2018 WL

1401327, at *9 (D. Del. Mar. 20, 2018) (deferring a choice of law analysis where nearly "no discovery

has taken place, and the Court would benefit from a more-developed record"); *Zazzali v. Hirshler*

*Fleisher, P.C.*, 482 B.R. 495, 517 (D. Del. 2012) (delaying the choice of law determination "until there is

development of a more complete factual record"); *Graboff v. The Collern Firm*, 2010 WL 4456923, at *8

(E.D. Pa. Nov. 8, 2010) ("[W]hen confronted with a choice of law issue at the motion to dismiss stage,

courts within the Third Circuit have concluded that it is more appropriate to address the issue at a later

stage in the proceedings."). At the time of the filing of Defendants' counterclaim, no discovery had taken

place. This weighs strongly in favor of deferring the choice of law analysis until the parties more fully

develop the record. *See Arçelik A.Ş.*, 2018 WL 1401327, at *9; *Zazzali*, 482 B.R. at 517.

Neither party has briefed the appropriateness of performing a choice-of-law analysis at the motion to dismiss stage.

Defendants argue that a choice of law analysis is required because the laws of California and Delaware governing tortious interference with a contractual relationship conflict and that California's law must control because it has the most significant relationship to the SmartAppointments Agreement and to Relentless' relationships with its employees, including Ms. Roeser. (D.I. 42 at 2-3). Defendants base this conclusion on the Restatement (Second) of Conflict of Laws § 188, which applies to the "rights and duties with respect to an issue in contract." (D.I. 42 at 4). In response, Plaintiff argues that Defendants did not properly plead the necessary facts in their counterclaims to point to California under the most significant relationship test. (D.I. 44 at 3). Additionally, Plaintiff argues that, because Defendants characterize the counterclaim as a compulsory counterclaim to Plaintiff's claims under the Stock Purchase Agreement and further cite to the Stock Purchase Agreement's venue and governing law provision when consenting to proper venue in this court, the Agreement's choice of law provision implicitly controls. (D.I. 44 at 4).

In a conflict of laws analysis for tortious interference, the guiding principles for the most significant relationship test are found in Restatement (Second) Conflict of Laws § 145 and § 156. *Int'l Constr. Prods., LLC v. Caterpillar, Inc.*, 2020 WL 4584354, at *8 (D. Del. Aug. 10, 2020); *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 725 (D. Del. 2011). The "most significant relationship test" is a fact-intensive inquiry where the court will weigh the importance of "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, the place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) Conflict of Laws § 145. "The applicable law will usually be the local law of the state where the injury occurred." Restatement (Second) Conflict of Laws § 156.

On the pleadings alone, many of the facts necessary to conduct this analysis are known and undisputed.

For the first factor, the Restatement provides that "the effect of loss, which is pecuniary in nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business." Restatement (Second) Conflict of Laws § 145; *Eureka Res., LLC v. Range Resources-Appalachia, LLC*, 62 A.3d 1233, 1238 (Del. Super. Ct. 2012) (finding the Plaintiff's place of injury in a tortious interference action to be its principal place of business). Relentless' principal place of business is California. (D.I. 2 ¶ 10; D.I. 29 ¶ 10).

Similarly, on a motion to dismiss, the place of the conduct causing the injury—the second factor—is assumed to be the Defendant's principal place of business. *Int'l Constr. Prods.*, 2020 WL 4584354, at *8; *Eureka Res.*, 62 A.3d at 1238. Aclate's principal place of business is Texas. (D.I. 2 ¶ 8; D.I. 29 ¶ 8).

The third factor, which calls for the place of incorporation and place of business of the parties, also implicates only undisputed information. Relentless is incorporated in California and Aclate is incorporated in Delaware. (D.I. 2 ¶¶ 8, 10; D.I. 29 ¶¶ 8, 10).

Lastly, the fourth factor necessitates a factual inquiry into the relationship between Aclate and Relentless, as well the relationship, if any, between the Stock Purchase Agreement, the SmartAppointments Agreement, and Ms. Roeser's employment. Because the parties contest the relevance of the Stock Purchase Agreement and thus much of their prior relationship to Ms. Roeser's employment with Relentless, there remains a significant, unresolved factual dispute in the record. As such, a choice of law analysis would be premature.

Without a complete choice of law analysis, Defendants' counterclaim will survive a motion to dismiss if it states a claim sufficient under either Delaware or California law. *See Graboff*, 2020 WL 4456923, at *8 (analyzing Plaintiff's claims under both Pennsylvania and Illinois law on motion to dismiss); *Hayes v. American Int'l Group*, 2009 WL 4591531, at *3 (E.D. Pa. Nov. 30, 2009) (dismissing Plaintiff's claims only "if they fail to state a claim under both states' law"); *cf. Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) ("Since Plaintiffs have made their allegations under New Jersey

law, the Court will apply New Jersey law for the purpose of examining Plaintiffs' claim under the Rule 12(b)(6) standard.").

### B. Interference with a Contractual Relationship

#### 1. Delaware Law

In Delaware, the elements of tortious interference are "(1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987).

Plaintiff argues that Defendants' counterclaim must fail on the first prong because the pleading fails to identify a contract. (D.I. 38 at 4). The counterclaim alleges that Aclate "interfered with and impeded Relentless's contractual relationship with Ms. Roeser and other telemarketing employees." (D.I. 29 ¶ 50). Under Delaware law, "claims for tortious interference with contract apply just as readily to an 'at-will' employee who has executed a valid employment contract*." Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219, at *10 (Del. Ch. Jan. 29, 2010); *see also ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749, 751 (Del. 2010) ("Conduct amounting to tortious interference has been found actionable even where the third party is lawfully entitled to terminate a contract 'at will.'"). At this stage, stating the existence of an employment relationship is sufficient to "allege a contract of employment existed." *Nelson v. Fleet Nat'l Bank*, 949 F. Supp. 254, 260 (D. Del. 1996).

Defendants' counterclaim states that Ms. Roeser's duties included working with Aclate and SMS Mastermind licensees in performance of the SmartAppointment contract. (D.I. 29 ¶ 46). Within six weeks of beginning work on this contract, Ms. Roeser and "several other members" of Relentless left and joined Aclate. (D.I. 29 ¶ 48). Defendants assert that an investigation revealed communications between Aclate and Ms. Roeser while she remained employed at Relentless. (D.I. 29 ¶ 49). Additionally, Defendants allege that Ms. Roeser communicated with Relentless employees to recruit them to Aclate. (*Id.*) On these facts, it is reasonable assume that Aclate had knowledge of Ms. Roeser's employment

relationship with Relentless given that she was working with Aclate and SMS Masterminds licensees on behalf of Relentless. (D.I. 29 ¶ 46).

Next, Plaintiff argues that the counterclaim fails because no breach occurred. (D.I. 44 at 4). Where a contract is terminated lawfully, a defendant may still be held liable for tortious interference if the defendant's conduct inducing the termination was wrongful. *Wagenhoffer v. Visionquest Nat'l Ltd*., 2016 WL 3947952, at *8 (Del. Super. Ct. July 14, 2016); *ASDI*, 11 A.3d at 752 ("the focus of the claim is on the defendant's wrongful conduct that induces the termination of the contract, irrespective of whether the termination is lawful").Courts in Delaware rely on the Restatement (Second) of Torts § 767 for guidance on what constitutes "improper" conduct. *WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012). The relevant factors include "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties." Restatement (Second) of Torts § 767.

Defendants contend that Aclate's conduct was unjustified and thus wrongful because it was done "to steal marketing and sales processes, employee information and customers in order to destroy Relentless' SmartAppointment business." (D.I. 42 at 9). However, this contention is not supported by Defendants' pleading. Defendants' counterclaim states that Ms. Roeser possessed "confidential and proprietary information" about Relentless. (D.I. 29 ¶ 47). But Defendants do not allege that Ms. Roeser took this information with her to Aclate. Defendants also assert that communications took place between Aclate and Ms. Roeser while she was employed with Relentless, but it is not alleged that such communications were out of the ordinary or inappropriate. (D.I. 29 ¶ 49). Lastly, Defendants point to communications from Ms. Roeser to other Relentless telemarketing employees recruiting them to join Aclate. (*Id.*). As above, even when construed in the light most favorable to Defendants, there is not a factual basis to conclude that such communications are wrongful. While Aclate may have hired Ms.

Roeser away from Relentless, the pleadings do not give rise to the inference that Ms. Roeser was induced to terminate her employment contract without justification or through wrongful means.

Defendants also claim that Aclate's hiring of Ms. Roeser and "other telemarketing employees" caused damages. (D.I. 29 ¶ 51). This is a conclusory allegation that cannot be credited without additional factual support. *Davis*, 765 F.3d at 241. As such, Defendants' counterclaim fails to adequately plead that Relentless suffered an injury as the result of Aclate's actions. Given the failure to plead sufficient facts demonstrating that Aclate's action was without justification or caused an injury, under Delaware law, Defendants' counterclaim does not state a claim upon which relief may be granted.

### 2. California Law

Under California Law, Defendants' counterclaim must also be dismissed. In California, the intentional interference with an at-will employment relationship is analyzed under the standard for intentional interference with prospective economic advantage. *Reeves v. Hanlon*, 95 P.3d 513, 520 (Cal. 2004) (holding "a plaintiff may recover damages for intentional interference with an at-will employment relation under the same California standard applicable to claims for intentional interference with prospective economic advantage"). This a similar, but distinct, tort from the intentional interference with a contractual relationship, and adds the requirement of pleading an "independently wrongful act." *Id.* Under this standard, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 954 (Cal. 2003)).

Defendants' counterclaim does not plead sufficient facts to survive under California law. Defendants cannot state a claim for interference with an at-will employment contract, as pled, under the doctrine of intentional interference with a contract in California. *Id*; *see also Ixchel Pharma, LLC v. Biogen, Inc.*, 930 F.3d 1031, 1037 (9th Cir. 2019). Under the higher standard for intentional interference with prospective economic advantage, Defendants have failed to plead an action by Aclate in connection with Ms. Roeser's employment that was independently wrongful. Merely contacting Ms. Roeser while she was employed with Relentless does not satisfy this element. *Reeves*, 95 P.3d at 520 (stating "a

10

defendant is not subject to liability for intentional interference if the interference consists merely of extending a job offer that induces an employee to terminate his or her at-will employment").  As such, Defendants have failed to meet the standard necessary to survive a motion to dismiss under California law.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion to dismiss Defendants' third counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) (D.I. 37) is GRANTED.  The third counterclaim is DISMISSED without prejudice.

Entered this 21st day of October, 2020.

_/s/ Richard G. Andrews_____
United States District Judge